IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN  DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| AMELIA WILBOURNE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| FORSYTH COUNTY SCHOOL | : | |
| DISTRICT, CANDICE NORTON, | : | CIVIL ACTION FILE. |
| in her official capacity as Executive | : | NO. 2:06-CV-78-WCO |
| Director of Human Resources for the | : | |
| Forsyth County School District | : | |
| and in her individual capacity; | : | |
| GEORGIA PROFESSIONAL | : | |
| STANDARDS COMMISSION, | : | |
| JUDY FRANKLIN, in her official | : | |
| capacity as Investigator for the | : | |
| Georgia Professional Standards | : | |
| Commission and in her individual | : | |
| capacity, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case is before the court for consideration of motions for summary

judgment filed by defendants Forsyth County School District ("FCSD") and

Candice Norton [49-1] and defendants Georgia Professional Standards

Commission ("PSC") and Judy Franklin [52-1].

## I.      **Factual Background**[1]

During the 2004-2005 school year, plaintiff taught at Otwell Middle School, which is part of the FCSD, and plaintiff's son attended South Forsyth Middle School.  In early February 2005, plaintiff's son defaced his locker and a school mirror.  Elizabeth Hebert, who was an assistant principal at South Forsyth Middle School, spoke to the son about these incidents and  assigned him to in-school suspension for one day.  She relayed the events to plaintiff in an e-mail.

Before plaintiff received Hebert's email, she discovered her son crying in the kitchen of their home.  Plaintiff's son acknowledged his misbehavior but lied about the facts of the incident.  Unwilling to admit that he had written "666" on a restroom mirror, he told his mother that he had drawn a smiley face on it.  Plaintiff reacted to her son's confession by, essentially, blaming one of his teachers.  In an e-mail to Hebert, plaintiff wrote:

> [My son] cried for an hour last night about not having any friends.
> This was before the incident today.
>
>  . . . I have felt [he] has suffered emotionally at the hands of Mrs.
> McAninch. . . . . I saw this [problem] coming two months ago and

---

[1]   Unless otherwise noted, the court draws the undisputed facts that underlie the allegations in the complaint from defendant's statement of undisputed material facts.  If, however, plaintiff has disputed a specific fact and pointed to evidence in the record that supports her version of the events, then the court has viewed that fact, evidence, or factual inference in the light most favorable to plaintiff.  Accordingly, the facts set forth above are either undisputed or are viewed in the light most favorable to plaintiff.

tried to curtail it by speaking with you.  I also talked with Sharon Purdie to get some help and advice just last week.  Unfortunately, not enough was done and things have gone beyond a point where they can be easily rectified.

. . . .

At tomorrow's meeting, I am not interested in hearing about all the things that [my son] is doing wrong.  I want to hear about what is currently being done to help him and what can be done to help him.

(Exhibit 2 to Wilbourne Dep.).[2]  Hebert responded to plaintiff the next morning:

I see [your son] as a very sad young man and we discussed this when he was in my office.  He did indicate to me that he had no friends and then talked about a couple of friends he does have in other grades.  The way he presents himself and the writings–666–seem to be a cry for help or attention.  I don't know his situation well enough to make a valid case for why he is behaving this way, but he certainly is not happy.

. . . .

In our meeting today, we will discuss [his] strengths, areas he is having problems in and ways to help him be successful. . . .

(Ex. 3 to Wilbourne Dep.).

Plaintiff panicked when she received Hebert's e-mail.  Already at Otwell, she believed her son was in danger, needed her, and should be immediately withdrawn from South Forsyth Middle School.  Visibly upset, plaintiff asked

---

[2] In 2002, plaintiff's son was diagnosed with Attention Deficit Hyperactivity Disorder. Since December 12, 2002, he has been receiving special education services from the school district.  His academic difficulties–not his behavior–prompted the scheduled meeting referenced in plaintiff's e-mail.

another teacher to cover her classroom and, unable to find any administrators, told a paraprofessional and two secretaries what she was doing.[3]  Plaintiff then left Otwell and headed to South Forsyth Middle School.  Along the way, she called South Forsyth Middle School and told its secretary that she was in route and intended to withdraw her son.

When plaintiff arrived at South Forsyth, Hebert invited her into the office, where Stacey Allen, the school district's special education facilitator, was waiting. Once in the office, an admittedly angry and emotional plaintiff explained why she planned to withdraw her son.  She told Hebert that her son had not been treated well at South Forsyth and accused his teacher of lying about him.[4]  Hebert, who interrupted plaintiff's explanation several times, found plaintiff to be rude and sarcastic and suggested that the parties resume their conversation that afternoon (at the scheduled meeting).  Plaintiff, however, "didn't want to have anything else to do with South Forsyth Middle School" and simply wanted to withdraw her son

---

[3]  That teacher did, in fact, cover plaintiff's classroom and instruct her students.

[4]  According to plaintiff, this is not the first time that FCSD officials or employees mistreated her son.  During the 2002-2003 school year, plaintiff accused his teacher of "dumping" the contents of his desk "on top of" him.  When the principal failed to report the incident to the PSC, plaintiff reported it *and* the principal to the PSC herself.  The PSC, however, declined to investigate and remanded the matter to the school district for consideration.  The school district investigated the incident and concluded that the teacher had emptied the contents of the desk on the floor (not onto plaintiff's son).  Nevertheless, the school's principal admonished the teacher that tipping a desk is not an appropriate way of teaching organizational skills to children.

(Wilbourne Dep. 96). Accordingly, she left Hebert's office, telling her that if they met again, plaintiff would be with her lawyer. Hebert reported the incident, including the implied threat of litigation, to the school district's central office.

In light of plaintiff's conduct and after consulting with administrators at the district's central office, Jeff Zoul, the principal at Otwell Middle School, wrote plaintiff a letter of directive. In the letter, Zoul communicated his belief that plaintiff acted unprofessionally on February 9, 2005:

> We have completed our investigation of a report indicating that, on February 9, 2005, you 1) left your classroom at Otwell Middle School during the instructional day while you were assigned to teach eighth grade students language arts, and 2) appeared at South Forsyth Middle School and confronted school administration in an unprofessional manner including yelling and exhibiting anger in discussions regarding a matter involving your son. I trust you recognize that these actions were unprofessional and I am concerned about the lack of appropriate judgment you utilized on February 9.

(Exhibit P-H to Zoul Dep.). The letter also recited, in no uncertain terms, that it would become part of plaintiff's 2004-2005 annual evaluation and placed into her personnel file.[5] Finally, the letter notified plaintiff that Dr. Norton had "followed

---

[5] Despite the February incident, Zoul gave plaintiff satisfactory performance marks as part of her annual evaluation in March 2005. He failed, however, to attach the letter of directive (as he had promised to do in the letter). Once Norton called this oversight to his attention, Zoul wrote "see attached" on the evaluation form, even though plaintiff had signed the earlier, unamended evaluation form as part of her annual review.

through with any necessary required reporting on behalf of the school system."
(*Id.*).

Norton, however, was unsure whether it was necessary to report plaintiff's conduct to the PSC. To find out, she called Gary Walker, who, at that time, was the director of the Educator Ethics Division of the PSC. Walker advised Norton to report plaintiff's behavior because the PSC had recently reviewed a similar complaint made against another teacher in another county. Consequently, on February 16, 2005, Norton filed a written complaint with the PSC. The Educator Ethics Review Committee ("EERC"), a subcommittee within the PSC, reviewed the complaint and recommended that the incident be investigated. The full commission accepted their recommendation.

Defendant Judy Franklin was assigned to conduct the investigation. In the course of her investigation, she interviewed a number of school system employees, including plaintiff, who was accompanied by her lawyer. Norton, as she has a practice of doing, sat in on or listened via telephone to many of the interviews. Following the interviews, Franklin prepared a report that contained her findings of fact, but she did not suggest how the PSC should respond to the incident. Ultimately, after reviewing Franklin's report, the EERC met and voted

-6-

to recommend that plaintiff receive a reprimand for her conduct, and the full commission met and voted that probable cause existed to reprimand plaintiff.[6]

This lawsuit grows out of the PSC's reprimand and the school district's letter of directive and report to the PSC. In her amended complaint, plaintiff alleges that defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the speech and petition clauses of the First Amendment. To some extent, plaintiff also contends that defendants violated the equal protection and due process clauses of the United States Constitution, as well as 42 U.S.C. § 1985. All defendants have moved for summary judgment on all counts of plaintiff's amended complaint.[7]

---

[6] At the time of both of these important sets of votes, neither the EERC nor the PSC knew the identity of plaintiff, the complainant (Norton), or the school district.

[7] In her responses to defendants' motions for summary judgment, plaintiff contends that the court should not consider the motions because defendants violated various procedural rules. Plaintiff's own inability to comply with this court's local rules, including her failure to file a timely response to defendants' motions for summary judgment, causes the court to look unfavorably upon her argument. Moreover, her argument that Franklin and the PSC abused the discovery process is misplaced. First, if those defendants failed to produce the appropriate corporate representative as alleged, plaintiff should have filed a motion to compel or otherwise attempted to resolve the dispute before dispositive motions were filed. Second, plaintiff's argument that Franklin and the PSC "blatantly" ignored the Federal Rules of Civil Procedure by failing to supplement their initial disclosures is incorrect. The duty to supplement under Rule 26 arises only if the information to be supplemented has not been made known during the discovery process. FED. R. CIV. P. 26(a)(1), (e)(1)-(2). Here, the witnesses about which plaintiff complains were identified by various deponents and in documents produced to plaintiff. Franklin and the PSC were not obligated to formally supplement their initial disclosures to identify Louisa Bond Moffitt or Terri T. DeLoach.

## II.   Discussion

### A.   *Legal Standard*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  It is well settled that a court considering a motion for summary judgment must view the evidence in a light most favorable to the nonmoving party.  *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  It is important to recognize, however, that this principle does not require the parties to concur on every factual point.  Rule 56 "[b]y its very terms . . . provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Id.* at 743. Adopting language from one of its sister circuits, the Eleventh Circuit stated:

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

*Id.* (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." *Id.*

    B.    *Discussion*

        1.    Claim under the ADA

The ADA provides that "'no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge … under [the ADA].'" *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (quoting 42 U.S.C. § 12203(a)). ADA retaliation claims, like plaintiff's, are assessed under the framework used for Title VII retaliation claims. *See id.* (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1075-77 (11th Cir. 1996)). Thus, to establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in statutorily protected expression, (2) an adverse employment action, and (3) a causal link between the protected expression and the adverse action. *Id.* (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). Once a *prima facie* case has been established, the employer has the burden of articulating a legitimate nondiscriminatory reason for the challenged decision. *Id.* The plaintiff then must "demonstrate that it will be able

to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id.*

Although it is difficult to decipher from her complaint, plaintiff's ADA claim against FCSD and Norton appears to rest on Zoul's letter of directive and Norton's decision to report plaintiff's conduct to the PSC, and her claim against Franklin and the PSC appears to rest on the PSC's decision to reprimand her for the February 2005 incident.[8] The "statutorily protected conduct" in which plaintiff allegedly engaged related to "advocacy"–her 2002 complaint and 2005 confrontation–on behalf of her disabled son.[9]

Even if the court assumes that plaintiff could satisfy her *prima facie* case, her ADA claim fails as a matter of law. Both Norton and FCSD and Franklin and the PSC have rebutted plaintiff's *prima facie* case by articulating legitimate, nondiscriminatory reasons for taking the challenged actions. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). The school district

---

[8] As noted earlier, Franklin investigated the complaint Norton filed and prepared an investigative report for the PSC; she simply did not recommend that any disciplinary action be taken against plaintiff. Accordingly, the court struggles to understand the basis for plaintiff's claim against her. Nevertheless, the parties have essentially treated Franklin and the PSC as one defendant for purposes of this claim, and the court will follow their example.

[9] Plaintiff also alleges that defendants retaliated against her after she filed a charge of discrimination with the Equal Employment Opportunity Commission. She has failed, however, to produce any evidence that defendants took *any* adverse employment action after plaintiff filed her charge.

contends that its decision to issue plaintiff a letter of directive and report her conduct to the PSC was prompted by plaintiff leaving her classroom (and school) without telling any administrator and, more importantly, *its belief* that plaintiff behaved unprofessionally at South Forsyth.  Similarly, Franklin and the PSC contend that the PSC's reprimand followed a full and fair investigation and was primarily motivated by the commission's belief that plaintiff breached the Code of Ethics when she angrily confronted Hebert at South Forsyth.

Faced with these legitimate, nondiscriminatory explanations, plaintiff must create a genuine issue of material fact as to whether these reasons are merely pretextual.  *Id.* at 1332.  In other words, she must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons did not actually motivate the challenged actions.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).  Plaintiff may establish pretext (1) by showing that the legitimate nondiscriminatory reasons should not be believed or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the challenged decision.  *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In her briefs, plaintiff appears to argue that a discriminatory reason–and not those cited above–motivated defendants.  The problem with that argument is that there is simply not enough evidence to support it.  The acts to which plaintiff points to demonstrate the retaliatory animus of Norton and the FCSD occurred well *after* the adverse decisions about which plaintiff complains were made.  Thus, plaintiff's evidence says little, if anything, about what motivated Norton and the FCSD weeks before, and it is certainly not evidence from which a rational factfinder could conclude that the reasons proffered by Norton and the FCSD were not the real reasons for their decisions.  Similarly, plaintiff's pretext argument as to the remaining defendants rests, almost exclusively,[10] on unsupported, conclusory allegations.[11]  "[A]llegations, opinions, and conclusory

_____

[10]  One of plaintiff's lone substantive arguments is that Franklin's failure to interview a particular teacher, Randi Sagona, demonstrates pretext.  According to Wilbourne, Ms. Sagona would have confirmed plaintiff's contention that her class had been covered by a qualified instructor.  Franklin, however, had already established that plaintiff's classroom was covered, and her report reflects this finding.  Accordingly, the court fails to attach the same importance to Franklin's failure to interview Sagona as does plaintiff and finds that it is insufficient evidence of pretext.

[11] For example, without citing any support, plaintiff characterizes the PSC's handling of Norton's complaint as follows:

> With one call from his old time colleague [Norton] who did favors for him, Walker immediately determined without investigation the alleged guilt of Mrs. Wilbourne, and even though the defendants learned the truth, they ignored it, and instead, Walker made sure defendants' the [sic] complaint resulted in a reprimand recommendation.

(Pl. Resp. PSC Mot. Summ. Jdgmt. 19).

-13-

statements are insufficient to create an issue of fact as to show an intent to discriminate." *Blount v. Ala. Cooperative Extension Serv.*, 869 F. Supp. 1543, 1553 (M.D. Ala. 1994) (citing *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 597 (11th Cir. 1987).

Plaintiff's ADA claim against all defendants is built on a foundation of speculation. The inferences she invites the court to draw–and maintains that a reasonable jury could draw–are illogical and implausible. Implausible inferences do not create genuine issues of material fact. *See Mize*, 93 F.3d at 743. Defendants are entitled to summary judgment on plaintiff's ADA claim.[12]

### 2.    Claim under the Rehabilitation Act

The parties agree that plaintiff's claim under the Rehabilitation Act is subject to the same legal framework as her ADA claim. *See Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997). Because plaintiff's ADA claim fails as a matter of law, her claim under the Rehabilitation Act does as well.

---

[12] Plaintiff's claim against Franklin, in her official capacity, and the PSC fails for an additional reason: it is barred by the Eleventh Amendment. *See Clifton v. Ga. Merit Sys., Inc.*, 478 F. Supp. 2d 1356, 1368 (N.D. Ga. 2007) (Pannell, J.) ("Congress did not validly abrogate sovereign immunity with regard to state employment discrimination actions under Title II [of the ADA].").

3.     First Amendment Claims

In her complaint, plaintiff also contends that defendants unlawfully retaliated against her in violation of the speech clause of the First Amendment. To prevail on this type of claim, plaintiff must show

> (1) she was speaking as a citizen on a matter of public concern; (2) her interests as a citizen outweighed the interests of the State as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action.

*Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) (internal citations omitted).[13]  The first two elements of this standard are questions of law that the court decides. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).

The threshold issue is whether plaintiff spoke as a citizen on a matter of public concern.[14]  To make this determination, the court must look to the "content, form, and context" of plaintiff's speech, *Connick*, 461 U.S. at 146, and ask "whether the 'main thrust' of the speech . . . is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." *Mitchell*

---

[13] If plaintiff could establish these elements, then the burden would shift to defendants to prove they would have made the same adverse employment decisions absent the speech. *Id.*

[14] If plaintiff spoke "on matters of personal interest and not as a citizen upon matters of public concern," her retaliation claim fails as a matter of law because the First Amendment is not even implicated. *Morris v. Crow*, 117 F.3d 449, 457 (11th Cir. 1997); *see also Connick v. Myers*, 461 U.S. 138, 147 (1983).

*v. Hillsborough County*, 468 F.3d 1276, 1283 (11th Cir. 2006) (internal citations omitted).

Neither defendants nor the court dispute that "abuse and discrimination of children with special needs is a public concern," Pl. Br. Resp. FCSD Mot. Summ. Jdgmt. 21. That statement, however, impermissibly generalizes the subject of plaintiff's speech and misstates the relevant test. *See Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) ("'[T]he mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.'" (quoting *Kurtz v. Vickrey*, 855 F.2d 723, 727 (11th Cir. 1988)). The relevant inquiry is whether the *purpose* of plaintiff's speech was to raise issues of public concern or to further plaintiff's private interest. *Id*. ("Rather [the court] must determine whether the purpose of [the speech] was to raise issues of public concern, on the one hand, or to further her own private interest, on the other.").

Here, all of plaintiff's relevant speech in 2002 and 2005 concerned what she perceived to be the mistreatment of her disabled son. Her grievances were distinctly personal and driven by her desire to improve her son's educational experience:

> I am a parent of a child with a disability, and I have every right to petition and to stand up for my child as a parent in getting him what he needs. That's what I did on February 9th of 2005. I got him out

-16-

of a bad situation, put him into a good situation, and there have been
no issues since.

(Wilbourne Dep. 165).   As in *Morgan*, plaintiff's speech took the form of

complaints to official bodies, and the record does not reveal any effort on

plaintiff's part to "relate her concerns . . . to the public, or attempt to involve the

public in any manner."   *Morgan*, 6 F.3d at 755.   Under these circumstances, the

court cannot conclude that plaintiff spoke as a citizen on a matter of public

concern when she advocated on behalf of her son.[15]

Plaintiff's complaint also contains an allegation that defendants violated her

right to petition under the First Amendment. This claim, like her speech claim, has

a public concern component.   *D'Angelo v. School Bd. of Polk County, Florida*,

497 F.3d 1203, 1211 (11th Cir. 2007).   For the reasons set forth in the preceding

paragraph, plaintiff cannot prove that she petitioned the PSC both as a citizen and

on a matter of public concern.   Therefore, her petitioning was not an activity to

which the protection of the First Amendment attached.

---

[15] Plaintiff argues in her responsive briefs that "the PSC requires educators to report abuse, and [plaintiff] is a licensed educator and whether she was employed or not, she *has a duty as a licensed educator to report such abuse* because it is a public concern."  (Pl. Resp. FCSD Mot. Summ. Jdgmt. 22) (emphasis added).  Plaintiff's attempt to escape *Morgan* runs her violently into *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006). There, the Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  126 S. Ct. at 1960.

Finally, plaintiff appears to contend that some defendants are liable to her under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  This claim, however, is foreclosed because, as discussed above, plaintiff has not established a constitutional deprivation.  *Freeman v. Town of Eatonville*, 225 Fed. Appx. 775, 780-81 (11th Cir. 2006) (unpublished opinion) ("[W]e make this inquiry [under *Monell*] only when a plaintiff has suffered a constitutional deprivation.").

    4.    Conspiracy

To establish a prima facie case of conspiracy against any defendant, plaintiff must show at a minimum that a defendant "reached an understanding [with another] to violate [her] rights."  *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988), *overruled in part on other grounds by Whiting v. Traylor*, 85 F.3d 581, 584 n.4 (11th Cir. 1996).  Plaintiff does not have to produce a "smoking gun" to demonstrate "understanding," *Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir. 1990), but she must present *some* evidence of agreement between the alleged conspirators.  *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("The linchpin for conspiracy is agreement . . . .").  To survive summary judgment, "[a] mere 'scintilla' of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

The complaint alleges in a conclusory fashion that each defendant conspired with one another to maliciously retaliate against plaintiff, but *no* evidence supports that allegation. Nevertheless, in an effort to avoid summary judgment, plaintiff highlights the existing, professional relationships between various members of the FCSD and the PSC and argues that a reasonable jury could infer a conspiracy from those relationships. This theory falls woefully short of establishing "some evidence of agreement [to violate plaintiff's rights] between the parties." *Bailey*, 956 F.2d at 1122. No reasonable jury could find that any defendant was aware of a conspiracy, much less that she or it agreed to participate in one.[16]

5.   Procedural Due Process

Plaintiff also argues that the PSC violated her right to procedural due process. The Fourteenth Amendment protects against the government's depriving one of liberty or property without procedural due process. *See generally Bd. of*

---

[16] The court is unsure whether plaintiff's conspiracy claim is brought pursuant to 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3), but it does not matter. Plaintiff's conspiracy claim, whatever its basis, fails for the reason discussed above and for an additional reason. First, plaintiff has failed to allege, much less establish, the class-based animus required to prove a conspiracy under § 1985. *See Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997). Second, to succeed on a § 1983 conspiracy claim, plaintiff must establish that she suffered a constitutional deprivation. *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) ("[T]o sustain a conspiracy action under § 1983, as distiguished from § 1985, a plaintiff must show an underlying actual denial of its constitutional rights."). She cannot make that showing.

*Regents of State Colls. v. Roth*, 408 U.S. 564 (1972). The deprivation, however, is not complete "unless and until the [s]tate refuses to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990); *see also McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise."). "In other words, if state courts, upon request, would provide an adequate remedy for the procedural deprivation plaintiff claims to have suffered, then there is no federal procedural due process violation, even if the plaintiff failed to take advantage of the state remedy." *Cook v. City of Jackson, Georgia*, No. 5:05-CV-250, 2007 WL 737514, * 5 (M.D. Ga. March 7, 2007) (citing *Horton v. Bd. of County Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000)).

Here, there has been no federal procedural due process violation because there is an adequate state remedy that plaintiff has failed to pursue. Under Georgia law, a party may seek a writ of mandamus when "no other specific legal remedy is available[,] and a party has a clear legal right to have a certain act performed." *Cochran v. Collins*, 253 F. Supp. 2d 1295, 1305 (N.D. Ga. 2003). Here, plaintiff contends that she has a clear legal right to a timely appeal and hearing. If so, she should have asked a state court to compel the PSC to take the

required action.[17] *See id.* (noting that writ could be used to "require a governmental board to hold a hearing as provided by law"). Plaintiff's failure to take advantage of this available remedy bars her federal procedural due process claim. *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process.").[18]

      6.     Claims under the Equal Protection Clause and 42 U.S.C. § 1985

Plaintiff alleged in her complaint that defendants violated § 1985 and the Equal Protection Clause. All defendants moved for summary judgment on these claims. Plaintiff failed to respond to their arguments and, accordingly, has abandoned the claims. *City of Lawrenceville v. Ricoh Electronics, Inc.*, 370 F. Supp. 2d 1328, 1333 (N.D. Ga. 2005).

---

[17] Plaintiff also complains about the PSC "altering" the charges against her. That is an issue that should be explored in connection with her appeal.

[18] The court is unsure why the PSC has not heard plaintiff's appeal. Their delay does not yet violate the Due Process Clause but is curious. The PSC would be wise to schedule and hear plaintiff's appeal as soon as possible. If nothing else, the hearing would forestall litigation in state court.

### III.   Conclusion

The motions for summary judgment filed by Norton and the FCSD [49-1] and Franklin and the PSC [52-1] are hereby **GRANTED**.[19]  The clerk is hereby **DIRECTED** to enter judgment for defendants.

IT IS SO ORDERED, this 20th day of March, 2008.


s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge

---

[19]  It is not clear to the court that plaintiff has attempted to bring any state law claims. The four counts of the complaint appear to be predicated on federal law and the United States Constitution.  In plaintiff's prayer for relief, however, she prays that the court enjoin defendants from violating certain rights she has under the Georgia Constitution.  To the extent this lawsuit includes state law claims, the court hereby **DISMISSES** those claims without prejudice.  *See* 28 U.S.C. § 1367(c); *Rice v. Branigar Organization, Inc.*, 922 F.2d 788, 792 (11th Cir. 1991) ("When a district court dismisses all of the federal claims before trial, the decision whether or not to exercise pendent jurisdiction over state-law claims is within its discretion.").